IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 DEC 13  AM 9: 11

CLERK _L. Flanders_
SO. DIST. OF GA.

| | | |
|---|---|---|
| DIANNE S. HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-127 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Dianne S. Harper ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff applied for a period of disability and DIB on August 30, 2006, alleging a disability onset date of January 1, 2002. Tr. ("R."), pp. 111-19. The Social Security Administration denied Plaintiff's applications initially, and on reconsideration. R. 67-73, 80-83. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the

ALJ held a hearing on June 10, 2009. R. 84, 23-66. Plaintiff, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard testimony from a Vocational Expert ("VE"). R. 32-60, 60-64. On August 5, 2009, the ALJ issued an unfavorable decision. R. 9-20.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful employment during the period from her alleged onset of disability through the date last insured (20 C.F.R. §§ 404.1571 *et seq.*).

2. Through the date last insured, the claimant has the following severe impairments: bipolar disorder, essential tremor, and hypothyroidism (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[1] (20 C.F.R. §§ 404.1520(d)).

4. Through the date last insured, the claimant has the residual functional capacity ("RFC") to perform a range of medium exertional work,[2] except that the claimant could frequently (but not constantly) perform fingering bilaterally, could perform unskilled work with limited contact with the general public and coworkers and a lower stress environment. Based on this RFC assessment and testimony from the VE, the claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

---

[1] The ALJ found that Plaintiff's essential tremor met or medically equaled the criteria of listing 11.17A (*Degenerative* [neurological] *disease not listed elsewhere*) as of October 2006, but found that there "is no evidence" that this condition did so prior to December 31, 2005, Plaintiff's date last insured. R. 16.

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5.     Through the date last insured, considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as hospital cleaner, sandwich maker, or order filler. (20 C.F.R. § 404.1565, 1569, 1569a). Thus, the claimant was not under a disability, as defined in the Social Security Act, from January 1, 2002 through December 31, 2005. (20 C.F.R. § 404.1520(g)).

R. 14-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ improperly rejected Plaintiff's subjective complaints concerning her impairments, and (2) the ALJ erred in failing to accord proper weight to the opinions of Plaintiff's treating physicians. (See doc. no. 9 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not

decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the

4

decision.  <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  The ALJ's Consideration of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ improperly rejected her subjective complaints concerning her impairments.  Pl.'s Br., pp. 5-7.  In particular, Plaintiff asserts that the ALJ failed to articulate sufficiently specific reasons for rejecting Plaintiff's credibility as to the severity of her tremors or her inability to concentrate.  <u>Id.</u>  The Commissioner maintains that the ALJ's credibility determination was appropriate because he specifically addressed Plaintiff's subjective complaints, but found that these complaints were inconsistent with the record evidence.  Comm'r's Br., pp. 8-10 (citing R. 15-18).

The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms.  <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*).  Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  <u>Id.</u>  When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."  <u>Foote v. Chater</u>, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts."

5

Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[3] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects the Holt analysis was appropriately followed when reaching the conclusion that Plaintiff's subjective complaints were not credible to the degree alleged. R. 14-18. The ALJ addressed each prong of the Holt analysis as described above, and substantial evidence in the record supports his findings.

First, the ALJ acknowledged that there was evidence of underlying medical conditions constituting severe impairments: bipolar disorder, essential tremor, and hypothyroidism. R. 14. Having addressed the first prong of Holt, the ALJ went on to evaluate Plaintiff's allegations of the severity of her symptoms stemming from those impairments. The ALJ reviewed the medical evidence of record, and found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the

_____

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. R. 18. In making this determination, the ALJ noted in particular that Plaintiff alleged that her essential tremor, depression, inability to tolerate stress, and poor handwriting precluded her from working. R. 18, 39, 51, 53, 155-61, 168-70.

Plaintiff reported being unable to work because of her tremor and bipolar disorder. R. 42, 53, 250. But despite these impairments, the ALJ noted that Plaintiff was able to perform house work and yard work, prepare meals, drive, perform personal care activities, and care for her dog and grandchild in a responsible manner. R. 15, 17, 155-56, 163-67, 231. Furthermore, while Plaintiff alleged that she did not go out to socialize or to shop, R. 166-67, the ALJ noted that Plaintiff reported attending church, eating out with friends, and socializing with family on a regular and frequent basis; others also reported that Plaintiff shopped with her husband. R. 15, 55, 158-59, 343. Plaintiff also reporting being terminated from her last employer for rudeness, yet the ALJ noted that Plaintiff also reported getting along well with coworkers and supervisors. R. 15, 250.

Although Plaintiff alleged that she had difficulty concentrating, R. 51, the ALJ noted that Plaintiff was able to concentrate well enough to enjoy television programming. R. 15, 163. While the ALJ noted Plaintiff's difficulty concentrating when she was suffering a manic episode or was not taking her medication, the ALJ did not find evidence to suggest that Plaintiff suffered such manic episodes frequently when she took her medication. R. 15, 47, 251, 345. And although Plaintiff had reported being depressed since the 1970s, the ALJ observed that this did not preclude her from working for many years. R. 15, 190, 342. In

addition, although Plaintiff alleged that her poor handwriting precluded her from working, R. 51, 53, the ALJ observed that "the ability to write is not required in all work." R. 18.

Furthermore, the ALJ found that the medical evidence of record did not support Plaintiff's allegations that her tremor precluded her from working prior to December 31, 2005, the date Plaintiff was last insured. R. 18. In this regard, the ALJ observed that prior to her date last insured, the most recent report addressing Plaintiff's essential tremor was prepared in December 2003 by Dr. Benjamin Bashinski, III, Plaintiff's treating physician. R. 237. The ALJ noted that in the December 2003 report, Dr. Bashinski described Plaintiff's tremor as "very mild," with no rigidity or bradykinesia. R. 16, 237. The ALJ also noted Dr. Bashinski's observation that Plaintiff was doing well on Inderal, which he had prescribed for her tremor. R. 16, 237-38. Moreover, the ALJ noted that during the December 2003 visit, Plaintiff "*was instructed by Dr. Bashinski to return to him if Inderal did not control her tremor*," yet she did not return to him until October of 2006, ten months after her date last insured. R. 16 (emphasis in original); R. 234-37. While the ALJ agreed that Plaintiff had met the listing as of October 2006, he found that there was "no evidence that she did so prior to December 31, 2005." R. 16.

Additionally, the ALJ noted that two state agency physicians, Dr. Arthur Lesesne and Dr. Russell Wallace, agreed that the absence of medical evidence indicated that Plaintiff's essential tremor was not severe until after December 31, 2005. R. 17, 268-69. Furthermore, although Plaintiff's delay in returning to Dr. Bashinski further undermines the credibility of Plaintiff's complaints regarding her essential tremor, the ALJ gave her the benefit of the doubt before concluding:

> Even if the claimant's tremor was no longer successfully controlled by Inderal in the months preceding October 2006, and even if the claimant delayed for whatever reason returning to Dr. Bashinksi as instructed by him, there is no evidence that her tremor met listing 11.17A (or was otherwise disabling) the year before she finally sought Dr. Bashinski's attention.

R. 16.

After the ALJ discussed the record evidence with regard to Plaintiff's impairments, he concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 18. Plaintiff argues that this statement was a "conclusory credibility finding," and "insufficient as a matter of law." Pl.'s Br., p. 7 (citing SSR 96-9p). Plaintiff contends that the ALJ's decision should have contained "specific reasons" for his credibility finding, supported by evidence in the record, as required by SSR 96-7p. Id. Yet Plaintiff has read the ALJ's credibility determination in isolation from the analysis that preceded it.

As noted above, the ALJ clearly articulated numerous, specific examples from the record that he used to discount Plaintiff's credibility, including inconsistences between Plaintiff's report of her symptoms and her description of her activities and lifestyle; evidence that Plaintiff's manic depression and essential tremor were well controlled with medication; a lack of medical evidence establishing Plaintiff's essential tremor as severe during the relevant time period; and Plaintiff's failure to seek treatment for her essential tremor from 2003 to 2006. R. 14-18. The Court acknowledges that the ALJ did not state after each inconsistency or evidentiary gap he observed that he was using it as evidence for his

credibility determination, but this is not what <u>Dyer</u> requires. <u>See</u> 395 F.3d at 1210 ("The credibility determination does not need to cite particular phrases or formulations. . ."). On the contrary, the ALJ's reasons for discrediting Plaintiff's credibility were "sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Plaintiff argues, however, that the ALJ should have given more credence to her complaints regarding her essential tremor because it was found to be disabling "so soon after her date last insured expired." Pl.'s Br., p. 7. Yet the ALJ clearly articulated his reason for rejecting this argument, noting that "there is no evidence to conclude that the claimant's tremor became disabling 10 days, 10 weeks, or 10 months prior to her [October 2006] appointment with Dr. Bashinski." R. 17. Moreover, as noted above, Plaintiff's nearly three-year delay in seeking follow-up treatment for her tremor undermines the credibility of her complaints as to this impairment. R. 16.

Therefore, in satisfying the requirements of <u>Holt</u>, the ALJ also sufficiently explained his reasons for discounting Plaintiff's credibility. Here, the ALJ's credibility determination was based on the record as a whole, and he properly articulated the basis for his determination in his written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding her symptoms, activities, and lifestyle under the <u>Holt</u> standard. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints concerning her alleged limitations after thoroughly evaluating the evidence in the record. <u>See</u> <u>Watson v. Heckler</u>, 738 F.2d 1169, 1173 (11th Cir. 1984) (*per curiam*) (concluding that the ALJ's consideration of objective medical

findings, the claimant's pain killers, failure to timely seek treatment, daily activities, inconsistent statements, and demeanor were sufficient to discredit disabling nature of the claimant's pain). Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562. Given the lack of evidence in support for the severity of her claims and the ALJ's clearly articulated reasons for discrediting the claims, Plaintiff's subjective complaints concerning her limitations were properly discredited.

### B.    Weight of Opinions of Plaintiff's Treating Physicians

Plaintiff further contends that the ALJ improperly discounted the opinion evidence of Dr. Bashinski, who treated Plaintiff for her essential tremor, and Dr. John Dirksen, Plaintiff's treating psychiatrist. Pl.'s Br., pp. 8-11. The Commissioner contends that the ALJ properly discredited Dr. Bashinski's opinion because it was contrary to his underlying treatment notes and not supported by the evidence of record. Comm'r's Br., pp. 10-12. The Commissioner further argues that the ALJ properly discounted Dr. Dirksen's opinion because it did not pertain to the time period under review, was unsupported by the record, and contradicted by Plaintiff's report of her functioning. Id. at 12-13.

To begin, it is well-settled in the Eleventh Circuit that a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (per curiam). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v.

Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Finally, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(e).

### 1. Dr. Bashinski

Plaintiff argues that the ALJ improperly discredited an opinion that Dr. Bashinski offered in May 2009, which she argues supports her argument that her essential tremor met or equaled the requirements of Listing 11.17A prior to her date last insured. Pl.'s Br., p. 8.

Because Dr. Bashinski's 2009 opinion referenced his earlier treatment notes from October 2006, in which he found Plaintiff's essential tremor to be disabling, R. 235-36, 333, the Court will briefly recount them here. In the October 2006 treatment notes, Dr. Bashinski noted that Plaintiff's handwriting was "significantly impaired" and "essentially not readable," noted some ataxia and decreased pinprick sensation on the left, and concluded that Plaintiff was suffering from an "essential tremor, which is progressive. Patient is disabled." R. 235-36. Two state agency physicians, Dr. Lesesne and Dr. Wallace, found that Dr. Bashinski's

October 2006 notes were evidence that Plaintiff's essential tremor met or equaled the criteria of listing 11.17A as of October 2006. R. 268-69. While the ALJ found that Plaintiff had met the listing as of October 2006, he agreed with Dr. Lesesne and Wallace that the absence of medical evidence indicated that Plaintiff's essential tremor was not severe until after December 31, 2005. R. 17, 268-69.

Dr. Bashinski later completed a form in May of 2009, in which he responded to a question inquiring whether Plaintiff was "'disabled' due to her medical condition(s) at any time prior to December 31, 2005." R. 333. Dr. Bashinski responded:

> I did not see the patient after 12/31/03 until 10/23/06. By 10/23/06 her tremor had become disabling. Certainly this was a progressive process between the two above dates. It is certainly reasonable to presume that this disability had occurred by 12/31/05, approximately 10 months before the 10/23/06 visit and 24 months after the previous visit on 12/31/03. It is not reasonable to presume that medically, this changed acutely/suddenly on 10/23/06.

Id. In his 2009 opinion, Dr. Bashinski also significantly limited Plaintiff's ability to perform physical vocational tasks, such as limiting her to only rarely lifting no more than ten pounds. R. 334-40. In her brief, Plaintiff argues that the ALJ improperly discredited Dr. Bashinski's 2009 opinion that her essential tremor was disabling prior to her date last insured. Pl.'s Br., p. 8.

The Court finds that the ALJ properly discredited Dr. Bashinski's 2009 opinion. As an initial matter, a determination of disability is an opinion reserved to the Commissioner, and thus neither Dr. Bashinski's 2006 opinion nor his 2009 opinion that Plaintiff is disabled

are entitled to controlling weight or special significance.[4] SSR 96-5p; see also 20 C.F.R. § 404.1527(e).

Moreover, after identifying Dr. Bashinski as a treating physician and correctly noting that, as such, his opinion is generally "entitled to great weight," the ALJ provided specific and adequate reasons for according his 2009 opinion "no weight." R. 16-18. In particular, the ALJ found that "Dr. Bashinski made no clinical findings prior to [December 31,] 2005 to support an application of his 2009 opinion to such a remote period." R. 18. Furthermore, the ALJ stated that even if Dr. Bashinski's 2009 statements as to Plaintiff's condition were accurate at the time he made them, "such statements are not accurate with respect to the time period under review." Id. The ALJ also cited other evidence of record that contradicted Dr. Bashinski' 2009 opinion, noting that Dr. Nojan Valadi described Plaintiff's essential tremor as "significantly worse" after 2006, further undermining Dr. Bashinski's conclusion that it was disabling prior to that time. R. 17, 330. Additionally, as noted above, the ALJ stated that Drs. Lesesne and Wallace also concluded that Plaintiff's essential tremor was not severe until after December 31, 2005. R. 268-69.

The ALJ also found that Dr. Bashinski's opinion was undermined by his earlier treatment notes: although Dr. Bashinski reported that Plaintiff received limited benefit from Inderal in 2009, this conflicted with his notes from December of 2003 – his last set of treatment notes from the period under review – which indicated that Plaintiff's tremor was

---

[4]The Court acknowledges Dr. Lesesne's statement that although Dr. Bashinski's opinion as to Plaintiff's disability was an opinion reserved to the Commissioner, he nevertheless gave it "great weight" in concluding that Plaintiff's essential tremor was disabling as of October 2006. R. 268.

well controlled by Inderal and that Plaintiff should return if she had any concerns or if Inderal was no longer controlling her symptoms. R. 16, 18, 237, 334. These are all proper bases for discrediting the opinion of a treating source. Lewis, 125 F.3d at 1440 (holding that a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records); see Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam) (ruling that physician's opinion made outside the time period under review was irrelevant to disability determination).

Furthermore, as the Commissioner correctly points out, Comm'r's Br., p. 11, Plaintiff bears the burden of demonstrating disability prior to her date last insured. 20 C.F.R. § 404.1512(a); see McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). Yet as the ALJ observed, there was simply no evidence in the record from which to conclude that Plaintiff's essential tremor was disabling prior to December 31, 205. R. 16, 18. Dr. Bashinski's retrospective opinion was insufficient to carry this burden. See Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) (holding that "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period" and citing cases from the First, Second, Eighth, Ninth, and Tenth Circuits that were in accord); Mason v. Comm'r of Soc. Sec., 430 Fed. App'x 830, 832 (11th Cir. 2011) (per curiam) ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); accord Wilson, 179 F.3d at 1279.

In sum, substantial evidence supports the ALJ's refutation of Dr. Bashinski's unsupported, retroactive opinion that Plaintiff's essential tremor was disabling prior to December 31, 2005, her date last insured. Thus, the ALJ's decision to give this opinion no weight should accordingly be affirmed.

### 2. Dr. Dirksen

Plaintiff also argues that the ALJ erred in failing to give more weight to the opinion of Dr. Dirksen, Plaintiff's treating psychiatrist. Pl.'s Br., pp. 10-11.

On June 27, 2007, Dr. Dirksen completed a questionnaire regarding Plaintiff's ability to do work-related activities. R. 318-21, 342-45. In the questionnaire, Dr. Dirksen checked a series of boxes in which he indicated that Plaintiff has no useful ability to accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; or deal with normal work stress.[5] R. 318-19. Dr. Dirksen also indicated that Plaintiff could be anticipated to miss more than four days of work per month due to her impairments or treatment. R. 321. According to the VE's testimony, an individual with the mental limitations Dr. Dirksen identified would be unable to perform any of Plaintiff's past work or any other work. R. 63.

The ALJ gave this opinion "scant weight" because, like Dr. Bashinski's opinion, it did not address the period under review. R. 18. Nevertheless, the ALJ stated that he incorporated Dr. Dirksen's conclusions regarding Plaintiff's functioning into her RFC by limiting her to unskilled work. Id. Moreover, the ALJ noted that Dr. Dirksen's opinion that

---

[5]The Court notes that the questionnaire asked Dr. Dirksen to support any of the limitations he identified with medical or clinical findings that supported his assessment. R. 319-20. These fields were left blank. Id.

Plaintiff was unable to interact appropriately with supervisors was contradicted by her statements to Dr. Douglas S. Payne, Ph.D., a consultative examiner, that she had gotten along well with coworkers and supervisors. R. 18-19, 250. Nevertheless, the ALJ restricted Plaintiff from working closely with the public or others in her RFC. R. 19. Finally, the ALJ stated that "Dr. Dirksen's guess that [Plaintiff] would miss more than 4 days of work each month is without support in light of [Plaintiff's] own admission that her symptoms were largely controlled when she took her medication." R. 19, 251.

Plaintiff argues that the ALJ's decision to afford Dr. Dirksen's opinion only "scant weight" is not supported by the evidence because Plaintiff presented testimony that she has trouble concentrating, R. 51, and that her previous employer terminated her because of her perceived rudeness, unsatisfactory phone demeanor, and taking down incorrect phone numbers, R. 145. Pl.'s Br., p. 10. Furthermore, Plaintiff argues, "[E]ven the consultative examiner, Dr. Payne, indicated that [her] ability to follow work routines and complete production expectations was impaired, as was her concentration;" she also notes Dr. Payne's statement that her prognosis is "guarded" and that she would become more depressed and more manic under stressful conditions. Id. at 10-11 (citing R. 252).

The Court finds that the ALJ properly discredited Dr. Dirksen's opinion. Like Dr. Bashinski's opinion, Dr. Dirksen's opinion was made outside the time period under review, which is a proper basis for rejecting his opinion. See Wilson, 179 F.3d at 1279. This is particularly true where, as here, the ALJ found insufficient evidence of a significantly limiting mental health impairment during the relevant time period. Mason, 430 Fed. App'x at 832; R. 15. Similarly, the ALJ properly rejected Dr. Dirksen's conclusion that Plaintiff

would miss four days of work per month because there was no evidence in the record to support this conclusion. Lewis, 125 F.3d at 1440.

Furthermore, while Plaintiff testified that she had trouble concentrating, the ALJ noted that Plaintiff otherwise reported that she was "fine" when on her medication, but "[o]ff [her] medication, [she] cannot concentrate." R. 15, 19, 251. As noted above, the ALJ properly found that Plaintiff's complaints regarding her ability to concentrate were contradicted by her statements that this symptom was controlled with medication. The Court also does not agree with Plaintiff that the ALJ was required to give Dr. Dirksen's opinion more weight because Dr. Payne also observed Plaintiff's difficulties concentrating and handling stress. Pl.'s Br., pp. 10-11. On the contrary, Dr. Payne's opinion conflicted with Dr. Dirksen's opinion: while Dr. Payne indicated that Plaintiff's mental impairment limited her concentration and ability to handle stress to some degree, he also noted that Plaintiff was "fine" when she was on her medication, that she could understand and carry out even complex instructions, and that "her ability to get along with the public, supervisors, and co-workers is intact." R. 251-52.

Moreover, as the Commissioner points out, Comm'r's Br., p. 12, the ALJ did not ignore Dr. Dirksen's opinion. R. 18-19. Rather, the ALJ took his opinion that Plaintiff experiences difficulty handling stress into consideration by limiting Plaintiff to unskilled work. R. 18. Additionally, the ALJ took this opinion into consideration, along with evidence that Plaintiff had been terminated from her previous employer for perceived rudeness, R. 145, by limiting her contact with the public and others in the RFC. R. 18-19.

In sum, the ALJ's decision to afford Dr. Dirksen's opinion only "scant weight" is

supported by substantial evidence. Accordingly, this decision is also due to be affirmed.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 13th day of December, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

19